On the Merits.
White, J.
Bethaneourt was a commission merchant in New Orleans, Bayhi a planter in the parish of Plaquemine. Bethaneourt made advances to Bayhi for the years 1871 and 1872. On the 26th of February, 1873, Bayhi, by act before Bouny, notary public? declared that “ for the purpose of paying the expenses incurred during the year last past, 1872, and to be incurred during the present year, for the cultivation of his plantation, situated in the parish of Plaquemine, he has agreed to contract a loan of the sum of fourteen thousand dollars, and that in order to represent the amount of said loan, which is advanced by Mr. John Bethaneourt, of New Orleans, he has made and subscribed five certain promissory notes to his own order, and by him indorsed, dated this day and payable at the New-Orleans National Banking Association in this city at the following periods, to wit:
“ One for the sum of $3750, due on the 1st of December, 1873 ;
“One for the sum of $2500, due on the 15th December, 1873 ;
“ Two for the sum of $2500 each, due on the 1st .and 15th days January, 1874; and
“ One for the sum of $2750, due on the 25th day of January, 1874.”
For the security of these notes he mortgaged his plantation and obligated himself to ship his crops to the merchant, the proceeds to be applied to the extinction of the notes. ‘ On the 7th of April, 1877, the plaintiff brought the present suit on two of these notes, and the defend *232 ant urged substantially the following defenses, which ultimated successfully in the lower court:
1. That plaintiff acquired the notes sued on at a sheriff’s sale after maturity and is hence subject to all equities.
2. That the notes had been extinguished by payment and by merger or novation.
3. That they were given simply as collaterals to secure future advances to be evidenced by an account, and were therefore only accessories to a principal obligation which is extinguished, and if not extinguished of which the plaintiff is not the owner, and therefore prevented from demanding the accessory when he has no right to the principal obligation.
We will examine these defenses seriatim :
First. It is beyond doubt that Lanata, the present plaintiff, bought the notes at sheriff’s sale, after their maturity, the sale having been made under an execution issued against Bethancourt. Under these facts, he acquired only Bethancourt’s rights, and in passing on the questions of law and fact arising in the controversy wo shall apply the law just as if Bethancourt were plaintiff, giving to the present plaintiff no greater rights than Bethancourt could himself enforce.
Second. The alleged payment and novation results from the fact that Bethancourt during the year 1873 discounted the notes in controversy and credited the defendant’s account with the proceeds and when taking them up at maturity debited the account with the amount. It is urged that the debiting of the amount indicated that the payment was made by Bethancourt as agent of defendant. We do not so think. Bethancourt was indorser of the notes. He had a right to pay them. He had an interest in paying them. Not only this; but by the fact of payment he was legally subrogated. O. 0. 2661; Millaudon vs. Colla, 15 L. 213 ; Suarez vs. His Creditors, 3 L. 431.
But it is contended that even if this conduct does not show payment of the account it establishes novation of the notes by the account. How, it is said, could the amount paid by Bethancourt be debited unless that debt which represented the note entered into the account and carried necessarily the note with it? The notes were Bethaneourt’s; they had been given him not only for future advances but for money stated in the act of mortgage to be actually due. He had credited the defendant with the proceeds of the notes, and obviously when the notes were taken up the debiting of the amount simply balanced the credit, leaving both parties in the exact position in which they were before any entry in the books on the subject, Bethancourt remaining the holder.of the notes as originally issued to him by the defendant, Bayhi remaining the debtor for the *233 ••sum which had been placed to his credit obtained from Bethancourt’s property.
That the mere credit of the proceeds of a note and subsequent debit of the amount does not per se operate a novation has been long determined by this court. Said Mr. Justice Bullard in Yard & Blois, Syndics, vs. Srodes, 9 L. 479 : ‘Í The defendant was really indebted to that house at the time in perhaps a larger sum, and if he had paid the note would have been entitled to a credit for that amount. * * * It is said that as soon as the note was returned it formed nothing more than an item in the account, so that Shall, Cantrell & Co. could not transfer a part of that account so as to divide their action against the defendant; but it is obvious that at least the note itself formed the best and perhaps exclusive evidence of an existing debt. Such an entry did amount perse to a novation.”
We are referred to a list of decisions by this court stated as being in conflict with the foregoing doctrine. We have examined them and do not so think. They hold that where notes are given for the accommodation of a factor and after discounting them, their mission, when taken •up by him, being accomplished, they are extinguished; or, as in the case of White vs. Rucker, 9 An. 114, that where the amount remaining due is less than the note an intention to novate the note by the account may be presumed. Such is not the ease here. The notes were given for an existing and valid consideration, and even as to future advances were given not simply as an accommodation ; but as evidence of a loan to be ■made for the future. The terms of the act of mortgage are express. It is said that although the notes purported to be for an existing consideration such was not the case ; that no debt existed at the time, and that the notes were merely for Bethancourt’s accommodation. The'language of the act of mortgage is unequivocal to the contrary. We are told, it is •true, that although the act of mortgage purported to be in part for' money due for advances made in 1872 there was nothing due for 1872. It is said the account for 1872 begins with a debit for $13,652 63 carried forward from previous years, and ends after the application of the crops of 1872 with a debit of only $13,504 40 ; therefore the debit at the end of the year being smaller than that carried forward at the beginning obviously no debt for advances existed in 1872, and therefore none was in existence when the act of mortgage was consented. This is a plain misconstruction. When the mortgage was consented, in February, 1873, the account for 1872 had been rendered the defendant. The common language of merchants is to state items charged in the account of the year as advances of that year ; and, therefore, when the parties said that ■the mortgage was consented to secure the advance of 1872 we consider 'it evident that they intended to mean not simply the advances made in *234 1872; but those charged in the account of 1872, which had then been-rendered. To hold the contrary, would be to say not only that Bethancourt, a merchant, accepted a mortgage in his favor to secure a debt not in existence when there was a debt actually due him, but also that the defendant mortgaged his property for a debt which he knew had been paid at the time of the mortgage. A construction leading to a presumption so full of intrinsic contradictions can not be correct. We think, to say the least, that the mortgage was a clear admission to the effect that the sums to the credit of the account were to be imputed to the amount carried forward from previous years, leaving the balance to the debitas really a debt due for advances made in 1872.
Third. The notes having been given for an existing consideration, and as evidence thereof, it is obvious that they were the evidence of a principal obligation. True, that at the time of the consenting of the mortgage the debt was only $13,504, and the mortgage and notes were for $14,000 ; but the existence of this small overplus could not destroy the existing and valid consideration.
The statement that at the time the last note sued on herein was paid and debited to defendant’s account there was a sufficient sum to the credit of the aocount to have paid it is incorrect. Even had there been, Bethancourt would have had a right to first apply the proceeds of the crop to the sum due him for advances of that year, for which he was a privileged creditor.
But even were we to accept the theory of defendant, that the notes were given to secure the final balance of account between the parties, the result would be the same, for the final sum due by the defendant in 1873, after crediting the proceeds of the crop of 1873, exceeded the total of the mortgage notes originally given. When the accounts were closed in 1873 there was to defendant’s debit $8624 76 ; but he had been in the account credited with the proceeds of all the mortgage notes and debited only with the two now sued on. In order, therefore, to ascertain the exact result of the operations of 1873, we must add to the debit side cf the account the face value of the outstanding notes which had been credited and not debited. So doing, we have a final debit of $16,424 76, an amount more than sufficient to cover the whole of the mortgage notes, greater than the amount carried forward from the previous year. We do not understand that where notes are furnished to secure a future loan the notes become an accessory obligation. Of course, where eo nomine, as was the case in Durrive vs. Key, 20 A. 154, an account is made a prerequisite to recovery, the contract is a law unto itself. The non-existence of consideration in a case like the one now before us would be a means of defense. We need scarcely say that the obligation evidenced by the notes is not barred’by three years, and that even if *235 the notes were collaterals, their existence alone would bean impediment to the acquisition of prescription.
It is therefore ordered, adjudged, and decreed that the judgment of' the lower court be annulled, avoided, and reversed ; and, proceeding to render such judgment as should have been pronounced by the lower-court,
It is ordered, adjudged, and decreed that there be judgment in favor of plaintiff and against the defendant for the sum of six thousand1 two hundred and fifty dollars, with interest on three thousand seven-hundred and fifty dollars at the rate of eight per cent per annum from December the 1st, 1873, until paid, and with like interest on twenty-five-hundred dollars from the 15th of December, 1873, until paid, with five-per cent attorney’s fees and costs of both courts. The whole secured by mortgage of the property described in plaintiff’s petition and in the-act before E. Bouny, notary, on the 26th of February, 1873.
Behearing refused.